BEATRICE S. TODD *vs.* LUCIUS FISHER FOSTER.

Suffolk.    October 3, 1951. — November 29, 1951.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Domicil. Jurisdiction,* Over the person, Absent resident, Divorce proceeding. *Practice, Civil,* Exceptions: what questions open.

A New York court, in which a judgment of divorce in favor of the wife and for payments for support by the husband was entered after service upon him only outside New York and without his having appeared in the divorce proceeding, had jurisdiction subsequently to enter a personal judgment against him for arrears in such payments if he was domiciled in New York at the time of the commencement of the divorce proceeding.

Conflicting evidence did not require a finding that a husband had changed his domicil from New York to Florida before the commencement of a divorce proceeding against him in New York.

In an action of contract upon a foreign judgment not open to collateral attack, error of the trial judge in finding for the plaintiff in an amount less than the amount of the judgment was not corrected by this court where the plaintiff had alleged no exceptions.

CONTRACT.    Writ in the Superior Court dated March 14, 1950.

The action was heard by *Cahill,* J.

*A. Sigel,* for the defendant.

*J. E. Rogerson,* (*W. N. Swift* with him,) for the plaintiff.

WILKINS, J.    The parties in this action of contract on a foreign judgment were formerly husband and wife. The plaintiff is a resident of New York, and the defendant now resides in this Commonwealth. The judgment, which was made and entered in the Supreme Court of the State of New York on February 24, 1950, is for $2,600, representing unpaid arrears in the payments for the support and maintenance of their three children accruing under a judgment of divorce made and entered on May 5, 1945, in the same court. There was a finding for the plaintiff in the sum of $1,347.30.

The defendant's exceptions, which are to the "finding for the plaintiff," to the denial of requests for rulings, and to the admission of evidence, all relate to the principal issue, which is whether the New York court, without service in that State upon the defendant, who entered no appearance, had jurisdiction to make and enter a personal judgment against him for the payment of money. This depends upon whether there was evidence that the defendant was domiciled in New York in October, 1944, when the divorce action was commenced. If he was so domiciled, he could be effectively served outside that State, as in fact he was served in the District of Columbia on October 24, 1944, pursuant to the applicable New York statutes.[1] In that event a valid judgment in personam could be entered against him which would meet all the requirements of due process. *Milliken* v. *Meyer*, 311 U. S. 457, 463. *Ellsworth* v. *Ellsworth*, 189 Misc. (N. Y.) 776. And a valid judgment for arrears could be made and entered in 1950 under the N. Y. Civil Practice Act, §§ 1171-b, 1172-d. *Durlacher* v. *Durlacher*, 173 Misc. (N. Y.) 329.

There was evidence from which the judge could find that the defendant was domiciled in New York in 1944, when the divorce action was commenced. There was testimony from the plaintiff that the defendant and she went to New York in 1932 and there lived together till 1936. The defendant testified that he acquired a New York residence in

---

[1] N. Y. Civil Practice Act (as it was in 1944). § 232. "An order directing the service of a summons upon a defendant, by publication, may be made in either of the following cases: . . . 3. Where the defendant, being an adult and a resident of the state, has been continuously without the state of New York more than six months next before the granting of the order and has not made a designation of a person upon whom to serve a summons in his behalf as prescribed by law; or a designation so made no longer remains in force; or service upon the person so designated can not be made within the state after diligent effort. . . . 5. Where the complaint demands judgment annulling a marriage, or for a divorce, or a separation. . . ." § 233. "In all cases when publication of the summons is ordered, service of the copy of the summons and complaint and of any accompanying notice required by rules by the delivery thereof to the defendant personally without the state is equivalent to notice by publication and deposit in the post office. . . . Service without the state must be made and proof thereof must be filed within sixty days after the order is granted; otherwise the order becomes inoperative. Service without the state in lieu of publication is complete ten days after proof thereof is filed."

1930. There was in evidence a Connecticut marriage license of the defendant and his present wife in which he stated under oath on October 30, 1941, that his residence was Scarsdale, New York, and his present wife similarly gave her address as Harrison, New York.

A domicil once established is presumed to continue until a new one is acquired, and the burden of showing a change is upon the party who asserts it. *Mellon National Bank & Trust Co.* v. *Commissioner of Corporations & Taxation,* 327 Mass. 631, 638, 640.

The judge was not required to find that the defendant changed his domicil from New York before October, 1944. The defendant's evidence as to such a change was conflicting. The defendant testified that when he left New York he went to Miami, Florida, for the purpose of establishing a residence there and to find work. This date he placed first in 1940, and later in 1941 after seeing the Connecticut marriage license. He also testified that after leaving New York he never returned there to live; that he was in Florida for about two years and then went to work for the War Production Board in Washington; that he was in Washington from 1942 to 1947, but retained his domicil in Florida; that in 1947 he moved to Boston, where he established his residence and domicil; that he registered to vote in Florida; that he filed his Federal income tax returns in Florida, and indicated his address as 2340 Prairie Avenue, Miami Beach, in a house which was owned by his present wife; that at the time he was served in Washington with papers pertaining to the New York divorce proceedings he was already under an order issued by the United States District Court for the District of Columbia for separate maintenance payments; and that in 1942 he filed application for homestead tax exemption with the tax commissioner of Dade County, Florida, in which he stated he resided in Miami Beach and in good faith intended to make it his permanent home.

The judge was not required to find that the defendant had established a Florida domicil in 1940 at a house of a

woman not his wife who the following year in marriage intentions gave her residence as New York. He was not required to find that such a domicil was established in 1941, in October of which both the defendant and his present wife gave New York residence addresses. The judge might well hesitate to find that the defendant became domiciled in Florida at any later time. The defendant went to Washington in 1942 and remained there for five years. Three documents pertaining to his voting status in Miami Beach must have had a confusing effect. A postcard, dated March 15, 1943, from the city clerk of the city of Miami Beach to the defendant contained the sentence, "Having registered on City Registration Books since September, 1938, you are still qualified to vote in this election, provided you have not given up your Miami Beach residence in the meantime." A registration certificate of the city of Miami Beach issued on March 28, 1942, stated that the defendant was a qualified voter of the city, having taken an oath that he had been a resident of Florida for twelve months and of the city for six months. Another certificate of the city clerk dated May 26, 1950, recited that the defendant "registered on our registration books as of March 28, 1942, stating that he resided at 2340 Prairie Avenue, Miami Beach, and claiming legal residence as of two years prior to the date of registration."

Registration as a voter, assessment of a poll tax, and similar facts are evidence, but not a conclusive determination, of domicil. *In re Sedgwick*, 223 Fed. 655, 656 (D. C. Mass.). *Leave* v. *Boston Elevated Railway*, 14 Fed. Sup. 775, 777 (D. C. Mass.). The effect of the three documents was to introduce three additional dates for the establishment of a Florida domicil: (1) September, 1938, three years at least before the defendant went to Florida; (2) at least twelve months before March 28, 1942, which would be at least seven months before the marriage license in Connecticut; and (3) two years before March 28, 1942, which would be at least a year and seven months before the Connecticut marriage license.

. The defendant relies to some extent upon statements made by the plaintiff in or concerning maintenance proceedings which she filed on May 19, 1944, in the United States District Court for the District of Columbia. In the complaint she alleged under oath that the defendant was domiciled in the District of Columbia. In the case at bar she testified that she never thought, and never told anyone at the time she brought her divorce proceedings, that the defendant was either a resident of or domiciled in New York; and that the situation at the time she filed the divorce proceeding was the same, in so far as the defendant's residence and domicil were concerned, as it was in May, 1944. These statements as to the defendant's domicil were at best only the plaintiff's own inferences, and in no event could be controlling upon the judge.

There was no error in any of the rulings complained of.

The judge should not have reduced the amount of the judgment, which could not be attacked collaterally. *Williamson* v. *Williamson*, 246 Mass. 270, 274. *Handschy* v. *Handschy*, 32 Cal. App. (2d) 504, 509–510. But the plaintiff, who has not alleged any exceptions, is not entitled to a more favorable result here.

*Exceptions overruled.*