FRANCESCA CERUTTI-O'BRIEN *vs.* DONNA-MARIE CERUTTI-
O'BRIEN.

No. 08-P-2078.

Barnstable. May 18, 2009. - July 1, 2010.

Present: DUFFLY, TRAINOR, & GRAHAM, JJ.

*Divorce and Separation,* Jurisdiction. *Jurisdiction,* Divorce proceedings.
*Domicil.*

A judge of the Probate and Family Court did not err in dismissing two complaints
for divorce on the ground of lack of subject matter jurisdiction, where
there was no question that the cause for the divorce occurred while the
parties were living in Florida, and where, at the time she filed the two
complaints, the plaintiff was not domiciled in Massachusetts so as to
satisfy the requirements of either G. L. c. 208, § 4, or G. L. c. 208, § 5.
[168-174] DUFFLY, J., dissenting.

COMPLAINTS for divorce filed in the Barnstable Division of the
Probate and Family Court Department on June 27, 2007, and
July 7, 2008.

A motion to dismiss was heard by *Virginia M. Ward*, J.

*E. James Veara* for the plaintiff.

*Donna M. Robertson* for the defendant.

TRAINOR, J. In this consolidated appeal, the plaintiff, Francesca
Cerutti-O'Brien, appeals from judgments of the Probate and
Family Court dismissing two complaints for divorce for lack of
subject matter jurisdiction. The plaintiff argues that, contrary to
the judge's findings, subject matter jurisdiction was proper
because she was domiciled in Massachusetts at all times relevant
to the divorce. We affirm.

*Background.* The facts as found by the judge can be sum-
marized as follows. The plaintiff and the defendant, Donna-
Marie Cerutti-O'Brien, were married in Truro on November 29,
2006. At the time the couple was married, the defendant lived

in Florida and the plaintiff lived in Massachusetts. During the couple's courtship, the defendant made it clear that she would not live in Massachusetts, desiring to be close to her family in Florida and being averse to the Commonwealth's colder climate. About four days after the marriage ceremony, the parties moved to Florida.

For ten years leading up to the marriage, the plaintiff had made routine trips to Florida, staying with friends or in rentals for periods of two to five months at a time. The defendant testified that the couple intended to open a store in Florida to operate during the high season between October and May. On December 7, 2006, the couple purchased a home in Nokomis, Florida. The couple took title in both their names and took advantage of the defendant's long-term residence in the State to claim homestead status, entitling them to certain tax exemptions and savings.

Problems in their relationship quickly arose, and the parties entered couples' counselling in Florida. On June 27, 2007, the plaintiff filed for divorce in Massachusetts in the Probate and Family Court. The complaint alleged that an irretrievable breakdown of the marriage occurred in Nokomis, Florida, on or about June 19, 2007.

During opening statements of the trial on the complaint for divorce, the defendant, appearing pro se, called into question the court's ability to hear the case, raising the issue of the plaintiff's domicil at the time she filed the complaint. The judge treated the matter as an oral motion to dismiss for lack of subject matter jurisdiction and subsequently held an evidentiary hearing on the issue.

The judge found that for seven months, up to and including the time of filing for divorce, the plaintiff was domiciled in Florida. The judge found disingenuous the plaintiff's representation that she did not move to Florida with the intent to remain there permanently. The judge determined that the credible evidence supported a finding that the parties intended to make Florida their permanent residence and to spend their summers in Massachusetts. The judge also found that due to the short period of marital happiness, the plaintiff never got around to changing her vehicle or voter registrations, if she had even

considered doing so. On May 23, 2008, the plaintiff filed a notice of appeal from the judgment of dismissal and the order denying her motion for reconsideration.

On July 7, 2008, the plaintiff filed a second complaint for divorce; on October 10, 2008, the defendant's motion to dismiss was allowed. The plaintiff's appeal from the dismissal of the second complaint was consolidated with her appeal from the first dismissal.[1]

*Discussion.* General Laws c. 208, § 4, amended by St. 1975, c. 400, § 9, provides that "[a] divorce shall not, except as provided in [G. L. c. 208, § 5], be adjudged if the parties have never lived together as husband and wife in this commonwealth; nor for a cause which occurred in another jurisdiction, unless before such cause occurred the parties had lived together . . . in this commonwealth, and one of them lived in this commonwealth at the time when the cause occurred." General Laws c. 208, § 5, amended by St. 1975, c. 400, § 10, enumerates certain exceptions to § 4, providing that "[i]f the plaintiff has lived in this commonwealth for one year last preceding the commencement of the action if the cause occurred without the commonwealth, or if the plaintiff is domiciled within the commonwealth at the time of the commencement of the action and the cause occurred within the commonwealth, a divorce may be adjudged for any cause allowed by law, unless it appears that the plaintiff has removed into this commonwealth for the purpose of obtaining a divorce." Here, there is no question that the cause for the divorce occurred while the parties were living in Florida.[2] The sole issue on appeal is whether the plaintiff was continuously domiciled in Massachusetts so as to satisfy the

---

[1]On October 9, 2009, we remanded this matter to the Probate and Family Court, granting the plaintiff "leave to file a complaint for divorce . . . on or before November 10, 2009." In accordance with what "she believed to be a mandatory directive from [this] court," the plaintiff filed a third complaint for divorce. On November 20, 2009, we issued an "order and clarification" in which we stated that the October 9, 2009, order "was intended to be permissive" and that the filing and service of another complaint for divorce "would render the instant appeal moot." The plaintiff responded to this court that she did "not wish to render the instant appeal moot." We understand that the third complaint for divorce was dismissed for lack of service.

[2]The judge's findings specifically note that the plaintiff's complaint alleged that the irretrievable breakdown of the marriage occurred in Florida.

requirements of § 4 or § 5 of c. 208 at the time she filed her two complaints.

The issue of the plaintiff's domicil presented "a question of fact for the trial judge." *Caffyn* v. *Caffyn*, 441 Mass. 487, 492 (2004). We review the judge's findings of fact only to determine whether they are clearly erroneous.[3] See *Kendall* v. *Selvaggio*, 413 Mass. 619, 620 (1992). At the outset, it is important to point out that, consistent with the case law concerning the burden of persuasion under Mass.R.Civ.P. 12(b)(1), 365 Mass. 754 (1974), see *Williams* v. *Episcopal Diocese of Mass.*, 436 Mass. 574, 577 n.2 (2002), "[t]he burden of establishing domicile[4] in order to obtain a divorce in Massachusetts is on the plaintiff." Kindregan & Inker, Family Law & Practice § 27:2, at 73 (3d ed. 2002). See *Field* v. *Field*, 236 Mass. 256, 258 (1920) (divorce action properly dismissed because plaintiff not domiciled in Massachusetts).

Moreover, in Massachusetts, "[f]or the purpose of jurisdiction in cases of divorce, the general rule is that the domicil of the husband is the domicil of the wife," *Burlen* v. *Shannon*, 115 Mass. 438, 447 (1874), see *Hood* v. *Hood*, 11 Allen 196, 199 (1865); *Loker* v. *Gerald*, 157 Mass. 42, 45 (1892); *Corkum* v.

---

[3]It is not our role to interpret the evidence differently from the judge and certain principles of the well-established "clearly erroneous" test must be reiterated:

> "First, the judge's assessment of the quality of the testimony is entitled to our considerable respect because it is the trial judge who, by virtue of his firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence. Second, if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Third, the burden is squarely on the appellant to show an appellate court that a finding is clearly erroneous."

*Edinburg* v. *Edinburg*, 22 Mass. App. Ct. 199, 203-204 (1986) (quotations and citations omitted). It is with these established principles in mind that we evaluate the single question of domicil raised in the plaintiff's appeal.

[4]"A change of domicil takes place when a person with the capacity to change [her] domicil is physically present in a place and intends to make that place [her] home for the time at least." *Hershkoff* v. *Board of Registrars of Voters of Worcester*, 366 Mass. 570, 576-577 (1974).

*Clark*, 263 Mass. 378, 386 (1928), which is not to say that the domicil of the husband must be that of the wife.[5] See *Watkins* v. *Watkins*, 135 Mass. 83, 85-86 (1883) (husband may establish domicil apart from his wife); *Corkum, supra*; *Katz* v. *Katz*, 330 Mass. 635, 639 (1953) ("wife may acquire a domicil apart from her husband"). As a practical matter and in light of changing constitutional norms, the rule simply means that domicil is presumed to follow the marital residence, i.e., that married couples live together. See Restatement (Second) of Conflict of Laws § 21 (1971), which defines domicil of wife as follows:

> "1. A wife who lives with her husband has the same domicil as his unless the special circumstances of the wife make such a result unreasonable.

> "2. A wife who lives apart from her husband can acquire a separate domicil of choice."[6]

Here, the plaintiff (1) bore the burden of persuading the judge of her Massachusetts domicil, and (2) had to rebut the presump-

---

[5]While it is true that common law required, by operation of law, that a married woman take the domicil of her husband, modifications of that common-law principle began very early in Massachusetts. See *Harteau* v. *Harteau*, 14 Pick. 181, 185-186 (1833). The fact that a married woman may establish a separate domicil from her husband in order to maintain a claim for divorce is not new law in Massachusetts. See *Perkins* v. *Perkins*, 225 Mass. 82, 85-86 (1916); *Corkum, supra*. Some authorities believe that "it is now clear that the married woman may acquire a domicile of choice apart from her husband as a matter of constitutional right." Clark, The Law of Domestic Relations in the United States § 4.3, at 270 (2d ed. 1987). See Restatement (Second) of Conflict of Laws § 15 (1971). This principle would seem to be especially applicable here in Massachusetts where we have amended our State Constitution in order to guarantee equal gender rights. See art. 1 of the Massachusetts Declaration of Rights ("Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin").

[6]Restatement (Second) of Conflict of Laws § 21 comment b, at 85, explains that "there will be extremely rare situations where a wife who lives with her husband has a domicil apart from his." The fact that we can interchange the phrase "spouse" for the phrases "husband" and "wife" where appropriate is obvious. It is therefore both practical and appropriate that the law presumes that spouses living together share the same domicil absent special circumstances. One such special circumstance, for example, is where a spouse executes an agreement prior to the marriage in which she states her intention to maintain her then current domicil as her domicil of choice and does not intend to assume her spouse's domicil. See *ibid.*

tion that, when she moved to Florida and established a marital residence there with the defendant, her domicil changed from the Commonwealth to Florida.[7],[8]

The plaintiff responded to the challenge to subject matter jurisdiction by claiming that she never intended to change her domicil from Massachusetts to Florida. The judge was not required to credit, nor did she credit, the plaintiff's self-serving claim. See *Commonwealth* v. *Davis*, 284 Mass. 41, 49-51 (1933) ("[t]estimony as to intention is not conclusive. . . . The cred-

[7]The dissent cites to the principle that "[t]here is a presumption that once domicile is established it continues," Kindregan & Inker, Family Law & Practice § 27.2, at 75, as the operative evidentiary presumption in this case and as militating against the judge's entry of the judgment of dismissal. We are constrained to point out that the cases cited by the dissent in support of this presumption neither involve, nor even relate to, challenges to the court's subject matter jurisdiction in divorce actions. See *Commonwealth* v. *Davis*, 284 Mass. 41 (1933) (action to recover income tax); *Levanosky* v. *Levanosky*, 311 Mass. 638 (1942) (action concerning the validity of an out-of-State marriage between two Massachusetts residents); *Todd* v. *Foster*, 328 Mass. 136 (1951) (action to collect on New York judgment for unpaid child support awarded pursuant to previously entered divorce judgment); *Fortier* v. *Rogers*, 44 Mass. App. Ct. 732 (1998) (postdivorce proceeding involving the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A [1994]); *Horvitz* v. *Commissioner of Rev.*, 51 Mass. App. Ct. 386 (2001) (action for tax collection).

Simply put, while it may be an appropriate presumption that domicil continues once established in tax and contract cases, there is no authority for the proposition that the presumption of marital domicil has been abolished in Massachusetts. See *Green* v. *Commissioner of Corps. & Taxn.*, 364 Mass. 389, 391-392 (1973) (acknowledging continued vitality of presumption of marital domicil in context of establishing jurisdiction for divorce actions). Even assuming that the presumption that domicil continues once established is applicable in this case, it is not inconsistent with the presumption of marital domicil and actually bolsters the judge's decision here, as the plaintiff's marital domicil, once established in Florida, is presumed to have continued there.

[8]"A presumption does not shift the burden of proof; it is a rule of evidence that aids the party bearing the burden of proof in sustaining that burden by 'throw[ing] upon his adversary the burden of going forward with evidence.'" *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 34 (2006), quoting from *Epstein* v. *Boston Hous. Authy.*, 317 Mass. 297, 302 (1944). See *Bank One, Texas, N.A.* v. *Montle*, 964 F.2d 48, 50 (1st Cir. 1992). Significantly, in this case, even if we were to assume that the presumption of marital domicil has been abolished, the plaintiff would nevertheless be required to establish jurisdictional facts. A new presumption would only benefit the plaintiff, as the party having the ultimate burden of persuasion, by imposing upon the defendant a burden of production. Here the defendant has plainly satisfied that burden of production. The judge's findings, therefore, would not have been clearly erroneous in any event.

ibility of witnesses is ordinarily entirely for the [factfinder]"). There was ample evidence negating the plaintiff's expressed intention. The plaintiff and the defendant moved to Florida within four days after being married, and not long after, purchased a home there, taking title jointly, under a special residency provision of Florida property law. The plaintiff had traveled to Florida many times over many years, but had never purchased property until she married the defendant and moved there with her. Additionally, prior to the parties' marriage, the plaintiff, in 2005, closed her shop in Massachusetts. While there was evidence that the couple intended to open a new shop in Florida, there was no evidence suggesting the plaintiff intended to open another shop in Massachusetts.[9]

Here, in the absence of some clear identifiable and compelling reason to the contrary, if not a clear and public declaration, the judge simply concluded that the couple married and purchased a marital residence in Florida. The residence was near family and certainly could not be considered to be a vacation home. The case law informs us and it is reasonable to conclude that a married couple, living together in the permanent marital residence, created a strong presumption of domicil at that residence.

This presumption, however, could have been overcome by a declaration of choice of domicil prior to the marriage. See note 5, *supra.* Here, the plaintiff neither lived apart from her spouse nor established a declaration of choice of domicil prior to the marriage.[10] The plaintiff's post facto and self-serving declaration to the contrary does not carry significant weight under the unusual factual circumstances of this case. Neither do the circum-

---

[9]The plaintiff's apparent financial independence renders the closing of the business in 2005 and the intention to open another in the future less significant than it otherwise might be to our determination of domicil.

[10]The dissent, *post* at 179 n.6, implies that the defendant made a declaration of domicil in Massachusetts, immediately prior to the marriage. The document referred to, however, is neither a declaration of domicil nor a declaration of separate domicil, but is the "Notice of Intention of Marriage" form. The defendant stated on the form that she intended to reside in the Commonwealth. It was then a prerequisite to being married here. (The law has since been changed.) Obviously, the defendant never intended to reside here and moved to Florida within a few days of being married. She also testified repeatedly that she never intended to reside in Massachusetts.

stantial indicia of the plaintiff's connection to Massachusetts after the marriage because of the rapid deterioration of the marriage and the plaintiff's extraordinary degree of financial independence. It was reasonable, and certainly not erroneous, for the judge to conclude that the evidence demonstrated the plaintiff's intention to change her domicil and to discredit her claim to the contrary.

Furthermore, despite the evidence that the plaintiff did not change her voter or vehicle registrations and maintained ownership of her Truro residence, all factors potentially contributing to a determination of domicil under different circumstances, see *Fiorentino* v. *Probate Ct.*, 365 Mass. 13, 22 n.12 (1974); *Caffyn*, 441 Mass. at 492, the judge found that the plaintiff had simply not gotten around to changing these registrations, perhaps as a result of the rapid breakdown of the marriage, and that the couple intended to use the Truro property as a summer residence.[11,12] Significantly, the judge considered evidence that the plaintiff had entered the marriage fully aware of the fact that the defendant was adamant, making it clear from the outset, that she would not reside in Massachusetts because of the weather and her desire to be close to family in Florida. It was proper for the judge to find that the credible evidence supported the find-

[11]The couple's marriage deteriorated very quickly after moving to Florida and the parties entered marriage counselling only months after the move. The problems only escalated as the couple began their legal battle in Florida (the subject and content of which is not before us). In light of these circumstances, the plaintiff's failure to change her voter registration and driver's license is not indicative of her intent to remain a Massachusetts domiciliary, and the judge's finding to the contrary was reasonable and supported by the evidence. The dissent notes that the defendant made numerous assertions that the plaintiff was not a Florida resident with no social or professional ties to the area. However, these assertions were made in the context of attempts to gain control of the marital residence and support from the plaintiff once the marriage had already broken down, not before. At some point during the couple's Florida legal battles, the courts of that State gave temporary exclusive use of the marital residence to the plaintiff.

[12]It is not unusual for our courts to disregard such circumstantial evidence. For example, in *Reiersen* v. *Commissioner of Rev.*, 26 Mass. App. Ct. 124, 131 (1988), despite the fact that the defendant maintained his American citizenship, used his Massachusetts address on his passport, owned a house in Massachusetts (and no property in the Philippines), and maintained a Massachusetts driver's license and bank account, this court held that he was domiciled in the Philippines.

ing that the plaintiff changed her domicil to Florida once the parties were married. See *Caffyn*, 441 Mass. at 492-493. Consequently, the plaintiff satisfied the requirements of neither § 4 nor § 5 of G. L. c. 208, and her complaints were properly dismissed for lack of subject matter jurisdiction.[13]

Finally, we note that the plaintiff has apparently now satisfied the alternative one-year residency requirement of G. L. c. 208, § 5, and having now reestablished her domicil in Massachusetts "presumably may now file a proper divorce complaint under § 5 even if the 'cause' for divorce did not occur in Massachusetts." *Miller* v. *Miller*, 448 Mass. 320, 325 n.9 (2007), quoting from *Caffyn*, 441 Mass. at 491 n.10. The plaintiff filed her first complaint for a divorce in Massachusetts in June, 2007, before she had returned from Florida. The plaintiff would have established her Massachusetts domicil and satisfied the one-year residency requirement by mid to late August, 2008, just weeks after filing her second complaint in July, 2008, which was also dismissed for lack of subject matter jurisdiction. The plaintiff has now had the ability to file a complaint for divorce, with proper subject matter jurisdiction, any time since August, 2008.

For the reasons stated above, the judgments are affirmed.

*So ordered.*

DUFFLY, J. (dissenting). Before us is a consolidated appeal from the dismissal of two divorce complaints filed by the plaintiff,[1] and from the denial of her motion for reconsideration.

The initial divorce complaint (and the defendant's counterclaim for divorce) was dismissed for lack of subject matter jurisdiction pursuant to the defendant's oral motion, lodged on the first day of trial. The Probate and Family Court judge considered the pleadings, as well as testimony and documentary

---

[13]Assuming that the plaintiff had reestablished her domicil in Massachusetts after leaving Florida, following the breakdown of the marriage, subject matter jurisdiction would not be proper under the statutes because, upon filing her complaint, she had not yet met the one-year residency requirement, and the breakdown did not occur in the Commonwealth.

[1]The first complaint was filed June 27, 2007; the second was filed July 7, 2008.

evidence submitted by the parties, in coming to her conclusion that, because the marital breakdown occurred in Florida, Massachusetts does not have subject matter jurisdiction. The plaintiff's motion to reconsider was denied. The second complaint was likewise dismissed.

The judge's decision focuses on the requirement in G. L. c. 208, § 4, that one of the parties to the marriage must have "lived in this Commonwealth at the time the cause [of the breakdown] occurred."[2,3] The parties agree that the marriage breakdown occurred in Florida. The judge's determination, that "[t]he credible evidence supports a finding that upon marriage the parties intended to make Florida their permanent residence," focuses on evidence of whether the plaintiff changed her domi-

---

[2]The judge's memorandum in support of her dismissal of the divorce complaint correctly cites G. L. c. 208, § 4, as the sole basis for a claim of jurisdiction over the parties' divorce. The relevant portion of the statute relied on by the judge provides: "A divorce shall not, except as provided in the following section, be adjudged . . . for a cause which occurred in another jurisdiction, unless before such cause occurred the parties had lived together as husband and wife in this commonwealth, and one of them lived in this commonwealth *at the time when the cause occurred.*" (Emphasis added by the judge in her memorandum of decision.) The memorandum further cites G. L. c. 208, § 5: "If the plaintiff has lived in this Commonwealth for *one year last preceding the commencement of the action if the cause occurred without the commonwealth,* . . . a divorce may be adjudged for any cause allowed by law, unless it appears that the plaintiff has removed into this Commonwealth for the purpose of obtaining a divorce." (Emphasis added by the judge in her memorandum of decision.)

Concluding that "[n]either party resided in Massachusetts at the time when the marriage allegedly became irretrievably broken," and that the plaintiff "did not reside [in Massachusetts] for one year last preceding the commencement of the action," the judge dismissed the plaintiff's complaint for divorce as well as the defendant's counterclaim for divorce. The decision is not based on a conclusion that the parties had never lived together as wife and wife in Massachusetts, and the judge makes no such finding. Indeed, the defendant's answer does not deny the assertion in the plaintiff's divorce complaint that "[t]he parties were married in Truro, Barnstable County, Massachusetts on November 29, 2006, [and] lived together as wife and wife in Truro, Barnstable County, Massachusetts."

[3]That the plaintiff may now file for a divorce based on having resided here for over one year, does not render the matter moot. The court in *Miller* v. *Miller,* 448 Mass. 320, 325 n.9 (2007), citing *Caffyn* v. *Caffyn,* 441 Mass. 487, 491 n.10 (2004), determined the issue of jurisdiction while noting that the plaintiff "now has satisfied the alternative one-year residency requirement" and could file a divorce complaint.

cil from Massachusetts to Florida following the marriage and appears to impose on the plaintiff the burden of establishing that she did not change her Massachusetts domicil.

Some of the findings are not supported by the evidence and the findings that are supported do not establish that the plaintiff changed her domicil from Massachusetts to Florida. It has long been established in a variety of substantive areas that when there is a claim that a fixed domicil has been changed, the burden of production and persuasion is on the one asserting the change. I would remand for new findings and consideration of the evidence in light of the applicable burden of proof.

*Burden of establishing changed domicil.* It is not disputed that at the time of the parties' marriage, the plaintiff had been a long-time domiciliary of the Commonwealth. "There is a presumption that once domicile is established it continues." Kindregan & Inker, Family Law & Practice § 27.2, at 75 (3d ed. 2002). See *Labonte* v. *Labonte*, 210 Mass. 319, 320-321 (1911).

Once a domicil is established, "the burden of showing a change is upon the party who asserts it." *Todd* v. *Foster*, 328 Mass. 136, 138 (1951) (in case involving collection of support arrears, defendant former husband asserted change in domicil; he failed to meet his burden of rebutting presumption that his established domicil continued). See *Levanosky* v. *Levanosky*, 311 Mass. 638, 642 (1942) (burden on libellant to establish "existence of an intent at the time of the marriage not to continue to have a domicil in this Commonwealth"); *McMahon* v. *McMahon*, 31 Mass. App. Ct. 504, 507-508 (1991). See also *Commonwealth* v. *Davis*, 284 Mass. 41, 49 (1933) (domicil of origin is "presumed to have continued in the absence of compelling evidence that it was changed. The burden of proof that his domicil was changed rested on the defendant because he is the one who asserted that such change had taken place"); *Mellon Natl. Bank & Trust Co.* v. *Commissioner of Corps. & Taxn.*, 327 Mass. 631, 638 (1951) (general rule that burden of showing a change of domicil is on party asserting the change); *Horvitz* v. *Commissioner of Rev.*, 51 Mass. App. Ct. 386, 394 (2001) (same); Restatement (Second) of Conflict of Laws § 19 comments a and c, at 78 (1971) ("A domicil, once established, continues until a new one is acquired. . . . The burden of proof is on the

party who asserts that a change of domicil has taken place"). Cf. *Fortier* v. *Rogers*, 44 Mass. App. Ct. 732, 734 n.4 (1998), quoting from *McDougald* v. *Jenson*, 786 F.2d 1465, 1483 (11th Cir.), cert. denied, 479 U.S. 860 (1986) (noting that Massachusetts jurisdiction lacking where plaintiff wife failed to prove husband's lack of domicil in Florida and "under Florida law, one's domicil, once properly established, is presumed to continue and the burden of proof ordinarily rests on the party asserting the abandonment of one domicil to demonstrate the acquisition of another").[4]

Here, it was the defendant who challenged the presumption by asserting that the plaintiff had changed her decade-long Massachusetts domicil to Florida and thus it was she who bore the burden of proving a change in domicil. This principle is not inconsistent with the rule that "[t]he burden is on the party asserting jurisdiction to prove jurisdictional facts." *Miller* v. *Miller*, 448 Mass. 320, 325 (2007), citing *Caffyn* v. *Caffyn*, 441 Mass. 487, 491 (2004). Neither *Miller, supra,* nor *Caffyn, supra,* depend on a showing of changed domicil to support jurisdiction. The issue of a change in a long-established domicil is not presented where jurisdiction is being asserted by "migratory divorce seekers," *Fiorentino* v. *Probate Ct.,* 365 Mass. 13, 21 (1974), who might fraudulently claim to have acquired a recent domicil in Massachusetts in order to obtain a divorce within the Commonwealth. In such a case, "[t]he burden of establishing domicile in order to obtain a divorce in Massachusetts is on the plaintiff." Kindregan & Inker, *supra* at 73, citing *Field* v. *Field*, 236 Mass. 256, 258 (1920). That is not the situation here.

The burden of production and persuasion shifts to the challenging spouse once the spouse seeking a divorce has made a showing of an existing domicil. Cf. *Horvitz* v. *Commissioner of*

---

[4]Other jurisdictions have also placed the burden of proof to show a change in established domicil on the party who asserts it. See, e.g., *Texas* v. *Florida*, 306 U.S. 398, 427 (1939); *Fuller* v. *Fuller*, 991 So. 2d 285, 290 (Ala. Civ. App. 2008); *Estate of Derricotte*, 744 A.2d 535, 538 (D.C. 2000); *Miller* v. *Nelson*, 160 Fla. 410, 420 (1948); *Leleux* v. *Stewart*, 859 So. 2d 703, 706 (La. Ct. App. 2003); *Gletzer* v. *Harris*, 51 A.D.3d 196, 199 (N.Y. 2008). As these cases reflect, in establishing domicil, the considerations regarding whether domicil was changed are the same whether the inquiry is as to personal or subject matter jurisdiction.

*Rev., supra* at 395 (where taxpayer has made showing of existing domicil, burden shifts to commissioner not only to produce evidence of change "but to persuade"). The plaintiff met her initial burden by asserting facts that established her Massachusetts domicil; upon the defendant's challenge to jurisdiction based on a change in domicil, the burden shifted to the defendant to prove that a change occurred.

Here, the defendant, contradicting her own admissions to jurisdictional facts set forth in her pleadings,[5] claims that the plaintiff had changed her domicil to Florida, challenging the Commonwealth's power to adjudicate a divorce within the Commonwealth. "Divorce, like marriage, is of concern not merely to the immediate parties. It affects personal rights of the deepest significance. It also touches basic interests of society. Since divorce, like marriage, creates a new status, every consideration of policy makes it desirable that the effect should be the same wherever the question arises." *Williams* v. *North Carolina*, 325 U.S. 226, 230 (1945). In the context in which the attack on jurisdiction arose in this case, the burden was on the defendant to prove that the plaintiff, who unquestionably was a Massachusetts domiciliary at the time of the marriage here, changed her domicil to Florida. The findings and evidence on which they rest must be reviewed in this light.

*Findings.* I have accepted all of the judge's findings that have a basis in the evidence, as well as those that are not "clearly erroneous." *Kendall* v. *Selvaggio*, 413 Mass. 619, 620 (1992). Findings based on conjecture and on the defendant's opinions or beliefs should be disregarded. See *Gladstone* v. *Treasurer & Receiver Gen.*, 337 Mass. 48, 51 (1958) ("a guess or conjecture in the form of a conclusion from basic facts that do not tend toward that conclusion has no evidential value"). Several findings fall in this category.

The finding that "[t]he marital bliss was so short lived that [the plaintiff] never got around to changing her [Massachusetts] vehicle or voter registrations, if she ever considered doing so at all," has no foundation in the evidence and is purely conjectural.

---

[5]In her answer and counterclaim to the first divorce complaint, the defendant admits that the plaintiff "maintains Massachusetts as her principal domicile."

Moreover, any inference that the plaintiff "never got around" to changing these objective indicia of her Massachusetts domicil does not meet the defendant's burden to establish that the plaintiff had changed that domicil to Florida. What was needed was affirmative evidence of a change, not the absence of a change.

Likewise, the judge's conclusion that the parties intended to spend only their summers in Massachusetts rests on the defendant's statement regarding her belief as to what the plaintiff knew ("she knew of my desire not to live in Massachusetts. And we were only going to spend summers in Massachusetts"). The finding that the defendant "was clear and unequivocal in her disclosures to [the plaintiff] during their courtship that she had no intentions of living in Massachusetts," supports an inference regarding the defendant's intent but not a conclusion that the plaintiff changed her domicil from Massachusetts to Florida. See *Green* v. *Commissioner of Corps. & Taxn.*, 364 Mass. 389, 391-395 (1973) (New Hampshire woman remained domiciliary of that State for the five months she continued to reside there following marriage to Massachusetts man); *Miller* v. *Miller*, 448 Mass. at 327 (no requirement that husbands and wives occupy the same home).[6]

The finding that the plaintiff had "closed a shop she operated in Massachusetts with the intention of opening a shop in Florida during the high season which runs from October through May each year," is not warranted on evidence that the plaintiff sold her business in 2005, a year before the parties were married, nor on the defendant's statement of what she thought they might do in the future ("we were going to open up a shop in Florida"). There was no evidence of the plaintiff's view of these plans or

---

[6]The majority notes that "the law presumes that spouses living together share the same domicil absent special circumstances," *ante* at 170 n.6, and that this presumption may be overcome by a "declaration of choice of domicil" prior to the marriage. Here, at the time of the marriage there was an existing home in the Commonwealth that the plaintiff continued to own when she purchased a second home in Florida, and where the parties lived together, if briefly, following their marriage. The defendant also executed a "Notice of Intention of Marriage" form, which the parties were required to complete prior to being married in Massachusetts. G. L. c. 207, § 20. In that form, the defendant stated that she intended to reside in Massachusetts. The form no longer requires such a statement.

that the parties took any steps toward starting a new business in Florida.

The finding that the parties "moved" to Florida appears to be based on the plaintiff's testimony that the parties went to Florida to the second home she was buying there and that she brought her car with her (which she then brought back to Massachusetts, as was her routine). In the context of uncontroverted testimony that the plaintiff maintained a home in Massachusetts and purchased a second home in Florida, where she routinely spent the winter months, the parties' "move" is a neutral fact that does not meet the defendant's burden of proving that the plaintiff changed her domicil. The fact that the plaintiff purchased a second home does not establish a change in domicil. The applicable rule as set forth in Restatement (Second) of Conflict of Laws § 20 is that where a person has "more than one dwelling place, his domicil is in the earlier dwelling place unless the dwelling place is his principal home." See *Tuells* v. *Flint*, 283 Mass. 106, 109 (1933). Evidence of indicia that would support Florida as the parties' principal abode are lacking here.

Findings that find support in the evidence and bear on whether the plaintiff changed her domicil are summarized:

The parties were married in Truro on November 29, 2006. They lived as a married couple in Massachusetts for some days before departing for Florida. At the time of the marriage, the plaintiff resided in a home in Truro, which she purchased five and one-half years before the marriage and has continued to own since the marriage. Problems arose shortly after the marriage and the parties enrolled in couples' counselling in Florida. For ten years preceding the filing of the divorce complaint, the plaintiff routinely made annual trips to Florida, ranging in duration from two to five months. The parties purchased a home in Nokomis, Florida, taking title jointly. The plaintiff is registered to vote in Massachusetts. Her vehicles are registered in Massachusetts. She filed a Massachusetts income tax return in 2006 (the year of her marriage).

These findings are insufficient to support the defendant's burden to establish by a preponderance of the evidence that the plaintiff changed her domicil to Florida and thus do not support dismissal of the divorce complaints on that ground. "[F]urther

probing was required rather than a determination of jurisdiction based upon what must be regarded as" an insufficient record. *Bank One, Texas, N.A.* v. *Montle*, 964 F.2d 48, 53 (1st Cir. 1992).

Though deference is due the judge's credibility determination that discounted the plaintiff's stated intent regarding domicil, there is a dearth of affirmative evidence of an intent to change her domicil and the objective evidence tends rather to support the plaintiff's expressed intent to remain domiciled in Massachusetts.[7] See *Levine* v. *Amber Mfg. Corp.*, 6 Mass. App. Ct. 840, 841 (1978) (finding was clearly erroneous when it rested "on nothing firmer than [judge's] obvious disbelief of the plaintiff's evidence [predominantly documentary and largely uncontradicted]"); *Reiersen* v. *Commissioner of Rev.*, 26 Mass. App. Ct. 124, 130 (1988) (board was not "required to believe Reiersen's expressions of intent, but they were uncontroverted and reinforced, rather than weakened, by the nonsubjective evidence"). "It is settled that mere disbelief of testimony does not constitute evidence to the contrary. A case lacking adequate affirmative proof is insufficient to support a verdict in favor of the party with the burden on the issue." *Kunkel* v. *Alger*, 10 Mass. App. Ct. 76, 86 (1980). See *New Boston Garden Corp.* v. *Board of Assessors of Boston*, 383 Mass. 456, 472 (1981).

I would remand for additional findings grounded in the evidence and for further consideration of the evidence in light of the defendant's burden of establishing by a preponderance of the evidence that the plaintiff's fixed Massachusetts domicil changed to Florida following the marriage.

For the foregoing reasons, I respectfully dissent.

---

[7]In addition to findings that are supported by competent evidence, the judge had before her at the hearing on the motion to dismiss and in connection with the motion to reconsider, this uncontroverted evidence: the plaintiff's primary financial institutions have remained in Massachusetts; the plaintiff has no employment in Florida; the plaintiff owns two vehicles, a 2004 Toyota Sienna and a 1999 Toyota 4-Runner, both registered in Massachusetts; she uses a vehicle to get to and from Florida, but does not leave one there.